Wytheville.

FURCRON V. GURKIN.

June 13, 1918.

Absent, Burks, J.

1. BOUNDARIES—*Plats.*—If it be conceded that in a proper case the clerk's record of a plat will have to be treated as a verity, this is not so where no question of registry as an element of title is involved, but the decisive question is as to the true subdivision of the property as actually made by the owners.

2. BOUNDARIES—*Burden of Proof.*—Defendant was in possession of a lot as defined by an amended plat recorded in the manner provided by law, and his residence occupied a part of the land in dispute when the plaintiff acquired title to the adjoining lot from the defendant's grantor.

*Held:* That the burden was upon the plaintiff to establish the location of the line.

3. BOUNDARIES—*Burden of Proof—Sufficiency of Evidence.*—In the case at bar, plaintiff's theory was that the line should be made perpendicular with the street upon which the lots faced. His evidence only went far enough to show that this theory could be carried into effect by either of two ways, and afforded no rational ground for adopting the method which would bring the land he sued for within the boundaries of his lot.

*Held:* That this evidence, as a matter of law, was insufficient to sustain a verdict in plaintiff's favor.

4. BOUNDARIES—*Plat—Construction—Questions of Law and Fact.*— A land company the owner of a tract of land subdivided it into blocks, lots and streets and recorded a plat thereof in the manner provided by law. In this plat the lots fronting on a street approached the same obliquely, and the land company decided that it was desirable to change the plat so as to make the lots perpendicular to the avenue. It, therefore, entered into an agreement with the other parties in interest, which recited that it was the desire of all the parties in interest to make a change in the plat, so as to make the lots perpendicular to the streets on which they fronted. This agreement and the amended plat

referred to therein were duly recorded. The plat attached to the agreement, adopted and recorded by the land company, was a complete and accurately defined scheme of subdivision, free from any element of uncertainty or ambiguity. It was an executed, practical and final interpretation of what the land company intended to do, and was expressly declared by the agreement to supersede the original plat and to be binding on all parties.

*Held:* That no room was left for construction, and that it was error for the trial court to permit the jury to consider and construe the agreement along with the plat attached thereto, in determining the true boundary line between two lots, and the recital in the agreement of a desire to make the lots perpendicular became unimportant and immaterial in view of the actual adoption of a plat whose lines are clearly and unmistakably fixed, although not exactly perpendicular.

Error to a judgment of the Circuit Court of city of Norfolk, in an action of ejectment. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*G. M. Dillard* and *R. M. Hughes,* for the plaintiff in error.

*Wm. G. Maupin, John B. Jenkins, Jr.,* and *G. Tayloe Gwathmey,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

This action of ejectment was brought by J. A. Gurkin against W. A. Furcron to recover possession of a portion of a lot, which may be conveniently designated as Lot 25 in Block 55, fronting on Colonial avenue, in the city of Norfolk. The plaintiff prevailed in the lower court, and the defendant assigns error.

The Sterling Place Company, a corporation, being the owner of a tract of land in Norfolk, subdivided the same into blocks, lots and streets, recording a plat thereof in the

manner provided by law. This subdivision was so made as that the lots fronting on Colonial avenue approached the same obliquely, and the Sterling Place Company decided that it was desirable to change the plat so as to make the lots perpendicular to the avenue. The only other parties then interested in the change were C. W. Grandy, the owner of a note secured by a deed of trust on the property, and H. C. Davis, the trustee. On the 17th day of February, 1905, the Sterling Place Company, C. W. Grandy and H. C. Davis, trustee, entered into an agreement which, so far as material here, was as follows:

"Whereas, it is the desire of all parties in interest to make a change in that portion of the plan of the company lying south of Gray street and Pocahontas avenue on said plat, by which certain lots in Blocks 53, 54, 55, 56, 57 and 58 shall be changed so as to be made perpendicular to the streets on which they front, and,

"Whereas, the parties have agreed upon a plat amending that portion of the original plat to that extent, which is hereto annexed;

"Now, therefore, in consideration of the premises, the parties hereby agree and consent to and with each other that the plat hereto annexed shall amend and supersede the corresponding portion of the original plat, and shall be recorded as a plat binding on all parties in interest."

This agreement and the plat referred to therein were duly admitted to record.

After some years had elapsed, and after a number of the lots in Block 55, as replatted, including Lots 25 and 26 which are directly involved in this litigation, had been sold and conveyed by reference to the replat, it developed that the new lateral lines, while apparently and approximately so, were not, in fact, exactly perpendicular; and this controversy grew out of that fact. The plaintiff contends for lines at exact right angles to Colonial avenue. We insert

here copies of the original and amended plats of Block 55, as recorded. The land in dispute is indicated upon the amend plat by the triangle A, B, C, south of the dotted line in Lot 25.

It will be seen that the rear dimension of Lot 25 does not appear in figures on the amended plat. It is a *concessum* in the case, however, and is manifest as a mathematical deduction, that this dimension is necessarily shown by the

plat itself to be twenty-six feet. Pocahontas avenue and
Thirty-seventh street are parallel. The total of the rear
lines of the lots is 208 feet, and the total of their front lines
is the same. The front and rear dimensions of each of the
other lots on Colonial avenue are conceded to be correctly
given according to the scheme of subdivision represented
by the replat, and the remaining rear line of Lot 25 must,
therefore, be twenty-six feet. In this connection, it may be
added that the original replat, an exact copy of which was
lodged with the clerk for recordation, expressly showed that
all of the lots on the replat, except Lot 31, were twenty-six
feet in the rear, having the figures "26'" on the rear of
Lot 25, the clerk having manifestly made a mistake in
spreading the plat on the record. The defendant contends
that this fact is immaterial. We do not think so. If it were
conceded that in a proper case the clerk's record would
have to be treated as a verity, the decisive question in this
case is as to the true subdivision of the property as actually
made by the owners. No question of registry as an element
of title is involved.

The plaintiff in this action, John A. Gurkin, is the owner
of Lots 26 and 27, which, though acquired by him after the
defendant had purchased Lot 25, were sold and conveyed by
the land company to the plaintiff's predecessor in title in
1909 by the following description: "Lots numbers twenty-
six (26) and twenty-seven (27) in Block number fifty-five
(55) each of said lots fronting twenty-six (26) feet on the
western side of Colonial avenue, and extending back, be-
tween parallel lines, one hundred and ten (110) feet, as
shown on the plat of the property of the party of the first
part, known as Colonial Place, which plat is duly of record
in the clerk's office of the Corporation Court of the city of
Norfolk, along with a certain agreement made between the
party of the first part, Theodore F. Rogers, trustee, and
Egbert G. March, executor and trustee, and Henry N. Tifft,

13

substituted trustee, dated February 2, 1904, and duly recorded in said clerk's office, in deed book 141-A, page 198, which said plat and agreement were subsequently modified by a further agreement between the party of the first part, and Hugh C. Davis, trustee, and C. W. Grandy, dated the 17th day of February, 1905, duly recorded in said clerk's office in deed book 145-B, page 294."

The defendant, W. A. Furcron, is the owner of Lot 25, sold and conveyed to him by the land company in 1910 by the following description: "Lot number twenty-five (25) in Block number fifty-five (55), said lot being bounded and described as follows, to-wit: Beginning at the southwest intersection of Pocahontas and Colonial avenues, and extending westwardly, along the southern side of Pocahontas avenue one hundred and fifteen feet; thence southwardly, and parallel with Colonial avenue, twenty-six (26) feet to the northern line of Lot number twenty-six in said Block number fifty-five; thence eastwardly, along the northern line of Lot number twenty-six, one hundred and ten (110) feet, to the western side of Colonial avenue; and thence northwardly, along the western side of Colonial avenue, fifty-two (52) feet to the point of beginning; as shown," (etc., as in deed to plaintiffs lots).

The plaintiff, of course, only claims that Lot 26 has front and rear lines twenty-six feet in length. His contention means that all the division lines between the lots on the amended plat are wrong, and should be at exact right angles with the avenue. This would result in upsetting the entire plat as to those lots; and it is to be observed that his contention for "perpendicular" lines could be satisfied in either of two ways: first, by commencing, as he wishes to do, on Colonial avenue fifty-two feet south of Pocahontas avenue, and extending the division line at right angles to the former so as to cut off a portion of the defendant's Lot 25; and, second, by commencing at the rear corner of Lot 31 on

Thirty-seventh street, measuring fifty-two feet along the rear line to the corner of Lot 31, and running thence at right angles to the avenue. Either method, carried to its conclusion, would result in reforming the plat so as to make the dividing lines exactly perpendicular; but either would increase the size of one of the corner lots and correspondingly decrease the size of the other. The former method would give the defendant less land than he bought, and give the plaintiff what he seeks here, a part of defendant's house and lot, the latter's loss in area being gained by the owner of Lot 31. The latter method would invert the triangle, add it to the defendant's lot, and the loss would fall to the owner of Lot 31. We are offered no satisactory reason, and can conceive of none, why the one method rather than the other should be adopted. This selection made by the plaintiff appears to be entirely arbitrary. The defendant was in possession of Lot 25 as defined by the amended plat, his residence occupying a part of the land now in dispute, when the plaintiff acquired title to Lot 26. The burden was upon him to establish the location of the line. (*Wood* v. *Phillips*, 117 Va. 878, 881, 86 S. E. 101 and cases cited). His evidence, even upon the theory that the lines must be made exactly perpendicular, only went far enough to show that this theory could be carried into effect by either of two ways, and afforded no rational ground for adopting the method which would bring the land he sued for within the boundaries of his lot. This evidence, as a matter of law, was insufficient to sustain a verdict in his favor.

But there is another view of the case which in our opinion is likewise fatal to the plaintiff.

The trial court, over the objection of counsel for the defendant, permitted the jury to consider and construe the agreement of February 17, 1905, along with the plat attached thereto, in determining the true boundary line be-

tween Lot 25 and Lot 26. This, we think, was error. The plat attached to the agreement, adopted and recorded by the land company, was a complete and accurately defined scheme of subdivision, free from any element of uncertainty or ambiguity. It was an executed, practical and final interpretation of what the land company intended to do, and was expressly declared by the agreement to supersede the original plat and to be binding on all parties. No room was left for construction. The recital of a desire to make the lots perpendicular becomes unimportant and immaterial in view of the actual adoption of a plat whose lines are clearly and unmistakably fixed. The tier of lots fronting on Colonial avenue constitute a parallelogram, the four corners of which are absolutely determined, and there is no dispute as to either of those corners. The course and total length of the front and rear lines are identical, and the dimensions of the front and rear of each lot having been accurately shown on the plat, every lot is necessarily defined by reference to fixed and known corners. This being true, if the plat itself had called for a "perpendicular" course, the division lines would have had to vary therefrom to conform to the established corners. In this case, however, if it can be said that the degree or course is called for at all, it appears in an agreement which refers to and adopts the amended plat as the final interpretation of what the agreement proposed to do.

The foregoing considerations, are, in our opinion, conclusive of the case and render it unnecessary to discuss other assignments of error involving questions which cannot arise in any future trial.

The judgment complained of will be reversed, and the cause remanded for a new trial to be had, if the plaintiff shall be so advised, not in conflict with the views herein expressed.

*Reversed.*